## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

**AEG LIVE - ROCKY MOUNTAINS, LLC,**

        **Plaintiff,**

**vs.**

**JOHN DOES 1-100, JANE DOES 1-100,
and XYZ COMPANY,**

        **Defendants.**

_____

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## PLAINTIFF'S EX PARTE APPLICATION FOR:
## A TEMPORARY RESTRAINING ORDER; SEIZURE ORDER;
## AND ORDER TO SHOW CAUSE REGARDING WHY A PRELIMINARY
## INJUNCTION SHOULD NOT ISSUED

# I . INTRODUCTION.

Plaintiff AEG Live – Rocky Mountains, LLC ("Plaintiff") submits this Memorandum of Law in support of its Ex Parte Application for: a Temporary Restraining Order; a Seizure Order; and an Order to Show Cause Regarding Why A Preliminary Injunction Should Not Issue (the "Order").  Plaintiff seeks this Order to stop the sale at concerts here in Denver only of unauthorized merchandise, and seize the same, which bears the federally registered trademark, servicemarks, logos and/or other indicia of the popular musical festival known as the **"MILE HIGH MUSIC FESTIVAL"** (collectively the "Festival Trademarks")[1] similar to ones granted by this Court and other courts to other festivals and performers. [2]  For the reasons stated below, such relief is warranted under the Lanham Act § 1051 et seq., F.R.C.P. Rule 65, and the All Writs Act.

## II.     STATEMENT OF FACTS.

On August 14 and 15, 2010, at the Dick's Pepsi Center in Denver, Colorado, the musical festival known as the **MILE HIGH MUSIC FESTIVAL** will perform (the "Festival"). See the Declaration of David Anver ("Anver Decl.") and the Certificate of

---

[1] The Plaintiff has obtained a US Trademark Registration for its **MILE HIGH MUSIC FESTIVAL** trademark, Registration Number 3578292 for International Class ("IC") 25, for use in connection with clothing, namely sweatshirts and T-shirts, IC 16 for use in connection with printed matter, namely posters and event programs and IC 41 for use in connection entertainment services, namely organizing and producing musical festivals.

[2] F.E.A., Inc. v. Does, Case No. 09-K-1386 (D. CO 2009) (Judge Kane) (for the group the Jonas Brothers' tour); Bravado International Group Merchandising Services, Inc. v. Does, Case No. 09-K-1185 (D. CO 2009) (Judge Kane) (for the group No Doubt's tour); Cousins Entertainment v. Does, Case No. 05-K-1290 (D. CO 2005) (Judge Kane) (for Eminem's and the Anger Management Tour); Giant Merchandising v. Does, Case No. 03-K-0700 (D. CO 2003) (Judge Kane) (for Jimmy Buffett's tour); Giant Merchandising v. Does, Case No. 03-N-1948 (D. CO 2003) (Judge Nottingham) (for Tony Hawk's tour); and Signatures Network v. Does, Case No. 01-D-0514 (D. CO 2001) (Judge Daniels) (for U2's 2001 tour).  See Certificate of Counsel.

Counsel pursuant to F.R.C.P. Rule 65 ("Burns Cert.") filed herewith.   Defendants currently identified as Does, also referred to as "Bootleggers," are currently engaged in the manufacture and thereafter the distribution and sale of unauthorized T-Shirts and other merchandise that bear the Federally Registered trademark, servicemarks, logos and other indicia of the Festival ("Infringing Merchandise") at the concerts in this District. Anver Decl. ¶¶ 4-19.

Bootleggers have plagued the previous Festivals held in Denver.   To combat this for other performances, Courts, including this one, temporary restraining and seizure orders, and thereafter nationwide seizure orders to seize the unlawful merchandise of such defendants.   Notably, in this case, an Order to be enforced only in this District is sought.   See Burns Cert and Exhibits thereto.

Plaintiff easily meets the showing required to obtain such relief and there is no defense to the claims brought by Plaintiff.   Plaintiff is the exclusive licensee of the Festival, and the sole merchandiser for the Festival's authorized merchandise which will be sold in Denver.   Anver Decl. ¶ 4.   Plaintiff has therefore demonstrated a substantial likelihood that it will succeed on the merits.   The Infringing Merchandise harms Plaintiff and the public in numerous ways.   Each sale of Infringing Merchandise by Defendants is an irrecoverably lost sale for Plaintiff.   Absent the relief requested herein, Plaintiff's monetary losses could aggregate in the hundreds of thousands of dollars.   Moreover, the damage to the goodwill of the Plaintiff through the distribution of inferior merchandise which will necessarily be seen as associated with them, cannot be calculated or remedied. Anver Decl. ¶¶ 9-19; Burns Cert. ¶¶ 6-20.

The public interest will be served by issuance of the relief requested. The public interest favors the protection of property and contractual rights. There is no potential harm to any legitimate interest of Defendants or any other persons if the requested relief is issued.  In addition, the relief requested here is the only proven method of protecting Plaintiff's rights and the public from inferior merchandise which bears a false designation of origin and created and sold by the Defendants, who are accountable to no one, whether for payment of royalties, sales taxes, or for quality control.  Anver Decl. ¶¶ 16-24.

The need for an ex parte order is manifestly evident.  Defendants' actions are completely unauthorized, and Defendants have both the means and motivation to destroy vital evidence before a noticed hearing and avoid service.  Similar orders have been obtained to protect the rights of merchandisers and distributors thereon against bootleggers and their unauthorized goods. In response to these orders, although thousands of bootleggers have been served, no defendant bootlegger has ever appeared since apparently they know their activities are unlicensed and unlawful. See Burns Cert. Accordingly, Plaintiff requests that this Court issue the requested order.

### III.   ARGUMENT

**A.   DEFENDANTS SHOULD BE ENJOINED FROM SELLING, DISTRIBUTING,AND MANUFACTURING INFRINGING MERCHANDISE.**

The standard for granting a preliminary injunction is well-settled in this Circuit.

In order to obtain a preliminary injunction, it must be demonstrated that:

> (1) plaintiff has shown substantial likelihood of success on the merits; (2) plaintiff will suffer irreparable injury if the injunction is not granted; (3) such injury outweighs any harm which granting the injunction would inflict on defendant; and (4) the public interest will not be adversely affected by the granting of the injunction.

Plaintiff meets this standard.   Moreover, once a violation of the Lanham Act is demonstrated, injunctive relief should issue.   Brockum Co. v. Blaylock, 729 F.Supp. 438, 445 (E.D. Pa. 1990).

> **1.      There Is A Substantial Likelihood That Plaintiff Will Prevail On The Merits Because Defendants Have Violated Section 1125(a).**

Courts have repeatedly held that the use of registered and unregistered names, images and logos of musical artists by bootleggers causes irreparable injury and violates section 43(a) of the Lanham Act.   Brockum Co. v. Blaylock, 729 F.Supp. 438, 444 (E.D. Pa. 1990) (there is no necessity under §43(a) that the marks in question be registered); SKS Merch, LLC v. Barry, 233 F. Supp. 2d 841, 853-854 (E.D. Ky 2002) (sales by Doe Defendant Bootleggers of merchandise bearing the unregistered marks of the artist Toby Keith violates section 1125 (a) and a nationwide seizure order was issued); Winterland Concessions Co. v. Sileo, 528 F.Supp. 1201 (N.D. Ill. 1981), mod. on other grounds, 735 F.2d 257 (7th Cir. 1984); Nice Man Merchandising, Inc. v. Logocroft, Ltd., 23 U.S.P.Q. 2d 1290 (E.D. Pa. 1992) (use of the names, trademarks, logos and likenesses of musical groups on defendants' merchandise without permission from plaintiff merchandiser "is likely to cause confusion, to cause mistake and to deceive.   Such confusion and/or deception will continue to result in immediate and irreparable injury to plaintiff.")

The purpose of the Lanham Act is "to protect persons engaged in . . . commerce against unfair competition" and "to prevent fraud and deception in such commerce."   15 U.S.C. §1127.   This broad prohibition against "unfair competition" covers not only confusion as to source or sponsorship between Defendants' Infringing Merchandise and Plaintiff's merchandise, it also prohibits the misappropriation of the efforts of others. See R.H. Anverey Corp. v. Illinois Bell Telephone., 595 F.Supp.1202, 1206 (N.D. Ill. 1984)

("those who invest time, money and energy into the development of a product and its accompanying good will should be allowed to reap the advantages of their investment"); Boston Athletic  v. Sullivan,867 F.2d 22,33 (1st Cir. 1989) ("a party cannot reap where it has not sown").

To establish a violation of section 43(a) "a plaintiff must demonstrate (1) that it is the prior owner of the trademark, and (2) that the defendant adopted a trademark that is the same or confusingly similar, so that consumers likely will be confused about the proper origin of the goods or services, such that a consumer is likely to believe that defendant's goods or services are being sold with the consent or authorization of the plaintiff, or that defendant is affiliated with or connected to the plaintiff." Ocean Bio-Chem, Inc., 741 F. Supp. at 1554 (citation omitted); Nassau v. Unimotorcyclists Soc. of America, Inc., 59 F. Supp. 2d 1233, 1236, (M.D. Fla. 1999); New West Corp. v. NYM Co. of California, Inc., 595 F.2d 1194, 1201 (9th Cir. 1979) (for purposes of injunctive relief, it is not necessary to show actual confusion or deception, but merely the likelihood of such).  These elements are clearly present here. The merchandise are goods, Defendants' sales effect the sale of Plaintiff's merchandise and, because of the use of Plaintiff's marks, there is the false designation which is likely to confuse.

The Tenth Circuit has identified various factors to consider when determining whether a likelihood of confusion exists: (1) the degree of similarity between the designation and the trade-mark or trade name in (a) appearance, (b) pronunciation of the words used, (c) verbal translation of pictures or designs involved, and (d) suggestion; (2) the intent of the actor in adopting the designation;(3) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the

other; (4) the degree of care likely to be exercised by purchasers.  Beer Nuts, Inc. v.

Clover Club Foods Co., 805 F.2d 920, 925 (10th Cir.1986).  Judged by these factors,

Defendants' have violated the Lanham Act and there is no excuse of Defendants' use of

Plaintiff's marks.  The Festival Trademarks are strong marks, known to literally millions

of members of the public. Defendants are using the same exact marks as Plaintiff and

selling their unlawful products at the Festival's performances.  Using the traditional scale

of marks from the generic to the arbitrary, the Festival Trademarks are arbitrary in that

they do not describe the goods to which they are attached but instead provide

identification, thus they have acquired secondary meaning and are incontestable.

Defendant Bootleggers will be copying the trademarks, servicemarks, logos and/or other

indicia of the Festival, therefore there can be no doubt as to consumer confusion.  Anver

Decl. ¶¶ 11-24. Since Defendants are aware of the Festival's use of its trademarks, there

is a presumption of bad faith. See AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 354 (9th

Cir. 1979) (deception may be presumed from the knowing adoption of a similar mark).

It is clear that the sale of unauthorized, bootleg T-shirts and other merchandise

bearing the trademarks, servicemarks, logos or other indicia of well-known performers or

festivals constitutes a violation of §43(a) of the Lanham Act. SKS Merch, supra, Nice

Man Merchandising, 23 U.S.P.Q. at 1292 ("the use of well-known performers' names and

likenesses upon novelty merchandise without the performers' authorization constitutes a

violation of § 43(a)"); Winterland Concessions Co. v. Creative Screen Design Ltd., 214

U.S.P.Q. 188 (N.D. Ill., 1981). As set forth by the District Court in Brockum Co. v.

Blaylock:

Defendant [Bootlegger] cannot obtain a "freeride" at the [exclusive licensee's] expense.  Its shirts are designed to take advantage of the efforts and expenditures of the plaintiff and benefit from the goodwill associated with the Rolling Stones, their 1989 tour, and the promotion of the event created or undertaken by the plaintiff and the Rolling Stones.  Such unlicensed use of the Rolling Stones' name would permit the defendant to reap where it had not sown.  Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 33 (1st Cir. 1989).  Defendant's argument that the T-shirt in question merely celebrates an "event" is circular reasoning, at best, given the fact that there would be no "event" to celebrate, were it not for the hard work and financial outlay provided by the plaintiff. 729 F. Supp. at 444.

Defendants have manufactured Infringing Merchandise for the sole purpose of selling it at the Festival's performances.  It is beyond dispute that Defendants have and will continue to knowingly utilize Plaintiff's marks to deceive the public and create the appearance that Defendants' Infringing Merchandise is sponsored by or originated from Plaintiff, and Plaintiff has no control over the quality of the merchandise.  Defendants' sale of Infringing Merchandise is intended to "free ride" on the marks of those the Festival, that have acquired value through the extensive efforts of the Festival.  This is precisely the type of conduct Sec. 43(a) was designed to stop.

### 2.      Defendants Have Violated Section 1114.

Under 15 U.S.C. § 1114, Plaintiff must show that Defendants have used the registered trademark:  (1) without consent; (2) in connection with the sales of goods; and (3) where such use was likely to cause confusion or to deceive purchasers as to the source or origin of the goods. Golden Door, Inc., v. Odisho, 437 F.Supp. 956, 962-63 (N.D. Cal. 1977), aff'd 646 F.2d 347 (9th Cir. 1980), overruled on other grounds. 287 F. 3d 866 (9th Cir. 2002).

Plaintiff is likely to prevail on its § 1114 claim, for the same reasons that it is likely to prevail on its claim under § 1125(a). New West Corp. v. NYM CO. of

California, 595 F. 2d at 1201. ("The likelihood of confusion test also is used for claims of trademark infringement under 15 U.S.C. 1114.). Since the Defendants use the federally registered mark on Infringing Merchandise and sell such goods at the very places where the Festival will be performing, there can be no doubt as to the confusion and intent of the Defendants.

### 3. <u>Plaintiff Will Suffer Irreparable Injury.</u>

Irreparable injury is presumed in the case of trademark infringement and Lanham Act violations. <u>E. Remy Martin & Co. v. International Imports, Inc</u>., 756 F. 2d 1525, 1530 (11th Cir. 1985); <u>SKS Merch, LLC,</u> 233 F. Supp. 2d at 847 (although irreparable injury is presumed once trademark infringement is shown, "Plaintiffs have independently established that they will be irreparably harmed absent a Preliminary Injunction enjoining the sale of bootleg merchandise related to Toby Keith throughout the nation."); <u>Nice Man Merchandising v. Logocroft, Ltd.</u>, supra; <u>Hard Rock Cafe Licensing v. Pacific Graphics</u>, 776 F. Supp. 1454, 1463 (W.D. Wash. 1991) ("in trademark infringement or unfair competition actions, once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm.").

As set forth in the Anver declaration, Plaintiff will be irreparably harmed by the continuing sales by the Bootleggers. These peddlers appear at the venue and they rarely have identification or keep records of their sales. In addition, irreparable injury is shown by the fact that Plaintiff has no control over the Infringing Merchandise or its quality, and, accordingly, will suffer a loss of goodwill due to sales of inferior Infringing Merchandise.

**4.   The Threatened Injury to Plaintiff Outweighs Potential Harm.**

Plaintiff has demonstrated that the threatened injury to Plaintiff outweighs the potential harm to the Defendants. Hard Rock Cafe, 776 F. Supp. at 1463 (valuable "Hard Rock Café" logo symbolizes the goodwill connected with [plaintiff's] business and that good will should not be jeopardized by placing it in the hands of [defendants].") Any inconvenience to Defendants will be merely economic, consisting primarily of lost profits from distribution of the illegal, Infringing Merchandise (and a bond will be posted by Plaintiff).  Plaintiff will be seizing only Infringing Merchandise from those Bootleggers at the concerts in Denver. Those in active concert with or assisting the bootlegging are also violating the Lanham Act and must be enjoined, as provided for by Rule 65.

**5.   The Public Interest Will Be Served By Issuance Of The Injunction.**

Plaintiff can show that the public interest is furthered by issuance of a preliminary injunction.  Indeed, one of the essential purposes of the Lanham Act is to protect the consuming public from being misled as to the source of goods:

> While plaintiff is injured when consumers purchase [defendant's merchandise] believing it to be [plaintiff's merchandise], consumers, too are being directly victimized. An injunction is thus in the public interest; only if the distribution of [defendant's goods] is stopped can further fraud be avoided.

Corning Glass Works v. Jeannette Glass Co., 308 F. Supp. 1321, 1328 (S.D.N.Y.), aff'd, 432 F.2d 784 (2d Cir 1970).  Public interest is especially strong when a federal statute expressly forbids the conduct in question.  Here, Defendants act in flagrant disregard of the laws. In sum, Plaintiff is entitled to injunctive relief.

### III. PLAINTIFF IS ENTITLED TO EX PARTE RELIEF CONSISTING  OF A TEMPORARY RESTRAINING ORDER AND A SEIZURE ORDER.

A.   **An Injunction and Seizure Order Are Necessary To Combat Defendants' Activities**.

Courts have issued temporary restraining order and orders of seizure in advance of concerts to stop the sale of Infringing Merchandise. See Burns Cert. and Exhibits thereto.  This procedure is specifically authorized by statute;15 U.S.C. §1116 provides for injunctions "upon such terms as the court may deem reasonable" to prevent violations of Lanham Act.  See, In re Vuitton et Fils, S.A., 606 F.2d 1, 4 (2d Cir. 1979) and cases cited therein (court has inherent power to issue seizure orders); Universal City Studios, v. Kamma Industries, 217 U.S.D.Q. 1162 (S.D. Tex. 1982). See also Burns Cert.

Moreover, the Lanham Act specifically contemplates that a temporary restraining and seizure order against Infringing Merchandise may be had by ex parte application. Section 1116 (d) authorizes ex parte orders where, in addition to the traditional requirements for injunctive relief: (1) an order other than an ex parte seizure order is not adequate, (2) the applicant has not publicized the requested seizure, and (3) the person against whom seizure would be ordered would destroy or otherwise make inaccessible to the court the infringing matters. 15 U.S.C. §1116(d)(4)(B).[3]

In the instant case, defendants are as yet specifically unidentified.  It is clear from the nature of their activities that they will be present in this jurisdiction only long enough

---

[3/]   In addition, in enacting the Trademark Counterfeiting Act of 1984, Congress in no way intended to change existing case law and precedent under Rule 65, the traditional equitable powers of a District Court under the Lanham Act, which has long been interpreted by numerous courts throughout the country to authorize the issuance of ex parte seizure orders involving unregistered trademarks. The legislative history of the Act makes clear that it was not intended to supersede or negate the line of cases beginning with In Re Vuitton, 606 F.2d 1, 4 (2d Cir. 1979), and the protection they provide.

to sell their unauthorized goods.   After the unauthorized goods are sold, they will promptly disappear.  Even if Defendants received notice and were served with a proposed temporary restraining order, it is highly unlikely that they would voluntarily comply and not sell their goods.  See Anver Decl. and Burns Cert.  Simply stated, there is no other means of preventing the Defendants from destroying Plaintiff's legitimate business without a seizure order.

A Court of Equity must be flexible and must be willing to issue an injunction appropriate under the particular circumstances of the case. See the All Writs Act, 28 U.S.C. § 1651 which broadly authorizes Federal Courts to issue "all writs necessary or appropriate in the aid of their respective jurisdiction and agreeable to the usages and the principles of law." Since there is no other remedy available to Plaintiff to prevent irreparable injury, this Court has the power to order the seizure of illegal merchandise as an exercise of its inherent power to obtain and retain jurisdiction in the matter.  In Joel v. Does, 499 F. Supp. 791 (E.D. Wisc. 1980), the Court stated:

> Were the injunction to be denied, Brockum would be without any legal means to prevent what is clearly a blatant infringement of their valid property rights.  While the proposed remedy is novel, that in itself should not weigh against its adoption by this Court.  A Court of Equity is free to fashion whatever remedies will adequately protect the rights of the parties before it. Id., at 792.

B. **Rule 65 of The Federal Rules Of Civil Procedure And the Lanham Act Provide Authority For The Ex Parte Relief Plaintiff Seeks**

Rule 65 of the Federal Rules of Civil Procedure permits the issuance of an ex parte temporary restraining order when failure to issue such an order would result in "immediate and irreparable injury, loss, or damage," and the movant demonstrates why notice should not be required. The irreparable harm from Defendants selling and

distribution activities has been shown. It will continue to mount until Defendants are enjoined.  Since Defendants have the temerity to conduct blatantly unlawful activities, making a business of selling infringing articles, and have an economic interest in continuing their unlawful actions, there is no reason to believe they will voluntarily stop.

The Court in <u>Vuitton</u>, supra, found that immediate and irreparable injury existed because of the substantial likelihood of confusion created by the itinerant Bootleggers selling their unauthorized goods and that plaintiff had shown why notice should not be given:

> [A]lthough this Court has frowned upon temporary restraining orders issued even without telephone notice there are occasions when such orders are to be countenanced.  In our judgment, this case is just such an occasion.  [***] Assuming that all of the other requirements of Rule 65 are met, the Rule by its very terms allows for the issuance of an ex parte temporary restraining order when (1) the failure to issue it would result in "immediate and irreparable injury, loss or damage" and (2) the applicant sufficiently demonstrates the reason that notice "should not be required."  In a trademark infringement case such as this, a substantial likelihood of confusion constitutes, in and to itself, irreparable injury sufficient to satisfy the requirements of Rule 65(b)(1). [* * *] If notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action.  This is precisely contrary to the normal and intended role of notice, and it is surely not what the authors of the rule either anticipated or intended.  606 F.2d at 4-5.

**C.  <u>It Is Appropriate To Issue A Temporary Restraining And Search Order To Enjoin Activities Of Persons Whose Identities Are Presently Unknown</u>.**

Plaintiff is proceeding to stop the bootlegging activities of Defendants whose identities are presently unknown. Courts have long recognized that known adversaries may be designated as "John Does" until plaintiff is able to specifically identify them.  See <u>SKS Merch</u>, supra,  <u>Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999 (1971); <u>John Hancock Mutual Life Ins. Co. v.</u>

Central National Bank in Chicago, 555 F. Supp. 1026 (N.D. Ill. 1983). Plaintiff need not await the consummation of the threatened injury to obtain preventive relief.  Babbitt v. United Farm Workers National Union, 442 U.S. 289, 298 (1979); Anderson v. Hooper, 498 F. Supp. 898 (D.N.M. 1980).  Indeed, any assertion to the contrary would constitute a conceptual rejection of provisional remedies available to a party who has sustained or is in immediate danger of sustaining a direct injury.  Flast v. Cohen, 392 U.S. 83 (1968); Babbitt, supra, 442 U.S. at 298.

In circumstances similar to the facts herein, many federal courts have issued temporary restraining and seizure and impoundment orders to enjoin various Doe Defendants from manufacturing, distributing, selling and otherwise commercially exploiting infringing merchandise associated with the tours of musical performing artists. In each case, an ex parte order was issued against unidentified defendants, originally designated as Does, to prevent the sale and to seize merchandise bearing the names, logos and trademarks of artists represented by the plaintiff in those actions. See Burns Cert. and Exhs thereto.

In Billy Joel v. Does, supra, the District Court held that, although the court does not favor unknown defendants and may not have in personam jurisdiction, in the case of Bootleggers:

> I am convinced that the requested injunction [and seizure order] should issue in the present case. ... The problem of the defendants' identifies is met, I believe, by the fact that copies of the summons, complaint, and restraining order itself will be served on all persons from whom Billy Joel merchandise is seized on the night of the concert.  These parties will be asked to reveal their names so that they can be added as parties to the law suit.  [* * *] [w]ere the injunction to be denied, plaintiffs would be without any legal means to prevent what is clearly a blatant infringement of their valid property rights. 499 F. Supp. at 792.

If courts failed to recognize "Doe" Defendants, clever wrongdoers could (and will) easily conceal their true identities until a statute of limitations run out, or, as here, they could leave Plaintiff with no practical recourse for violations of their rights. <u>Moon Records</u>, 217 U.S.P.Q. 39 (N.D. Ill. 1981) ("the problem regarding the identity of the defendants will be met by requiring copies of the complaint and the [order] to be served upon all persons from whom infringing merchandise is seized..."). Consistent with the Rule 4(j) of the Federal Rules of Civil Procedure, Plaintiff's process servers will make every reasonable effort to further identify the Defendants for purposes of amending the pleadings.

It has been the repeated experience of Plaintiff and Plaintiff's counsel that most, if not all, of the Bootleggers are persons extremely experienced with selling Infringing Merchandise.  Most are not neophytes, but rather somewhat sophisticated businessmen who operate in stealth to thwart the legitimate rights of Plaintiff. Bootleggers travel around the country from venue to venue selling their counterfeit wares.

**D.  <u>Defendants Have A Full And Fair Opportunity To Be Heard.</u>**

Although it is not known at this time whether any Defendants will appear before the Court on the return date to oppose the requested relief, experience shows it is doubtful they will do so.  However, they certainly have that opportunity.  Plaintiff would welcome such appearances for it would permit it to identify the bootleggers, take discovery from them, discover their printing sources and pursue them for money damages.  The proposed Order will provide that a person who wishes to challenge the seizure has the opportunity to file responsive papers thereby giving any defendant a full and fair opportunity to be heard, while the merchandise, the critical piece of evidence, is preserved.  However,

without the proposed injunction and seizure order, Plaintiff will be left without a realistic remedy to enforce its clear rights.

**IV.**   **CONCLUSION**

Plaintiff respectfully requests that its application be granted in all respects.

Dated:  August 9, 2010

   /s Cara R. Burns
CARA R. BURNS
Hicks, Mims, Kaplan & Burns
3250 Ocean Park Blvd, Ste 350
Santa Monica, CA 90405
Tel: (310) 314-1721
Fax: (310) 314-1725
E-mail: cburns@hmkblawyers.com
Attorney for Plaintiff